# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MATTHEW WRIGHT, on behalf of himself and all similarly situated stockholders of BETTER HOME & FINANCE HOLDING COMPANY, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2024-0306-KSJM |
| MICHAEL FARELLO, VISHAL GARG, ARNAUD MASSENET, PRABHU NARASIMHAN, STEVEN SARRACINO, HARIT TALWAR, RIAZ VALANI, and BETTER HOME & FINANCE HOLDING COMPANY, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: April 1, 2025
Date Decided: October 27, 2025

Kimberly A. Evans, Irene R. Lax, Daniel M. Baker, Robert Erikson, BLOCK & LEVITON LLP, Wilmington, Delaware; Jason M. Leviton, BLOCK & LEVITON LLP, Boston, Massachusetts; J. Abbott R. Cooper, ABBOTT COOPER PLLC, Stamford, Connecticut; *Counsel for Plaintiff Matthew Wright.*

Michael A. Pittenger, Nicholas D. Mozal, Megan R. Thomas, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Mark Elliott, Rachel Rodriguez, ELLIOTT KWOK LEVINE JAROSLAW NEILS LLP, New York, New York; *Counsel for Defendants Michael Farello, Vishal Garg, Arnaud Massenet, Prabhu Narasimhan, Steven Sarracino, Harit Talwar, Riaz Valani, and Better Home & Finance Holding Company.*

**McCORMICK, C.**

The stockholder plaintiff claims that the corporate defendant's advance-notice bylaw is facially invalid. Facial invalidity is difficult to demonstrate. As the Delaware Supreme Court recently held, a facial challenge to a bylaw can only succeed where "the bylaw cannot operate lawfully under any set of circumstances."[1] The defendants argue that the plaintiff has not met this standard, and this decision grants the defendants' motion on that basis. The plaintiff successfully demonstrated that the challenged bylaw is long, broad, and overly complicated. But the plaintiff has not demonstrated that the bylaw cannot operate lawfully under any set of circumstances. The defendants also argue that the plaintiff's facial challenge is unripe. A ripeness determination requires a commonsense assessment of whether the interests of the party seeking relief outweigh the concerns in postponing review until the question arises in some more concrete form. Here, that commonsense assessment favors resolving the claim on the merits, as this decision does.

## I.  FACTUAL BACKGROUND

The facts are drawn from the Verified Class Action Complaint (the "Complaint") and the documents it incorporates by reference.[2]

Better Home & Finance Holding Company ("Better Home" or the "Company") is a Delaware corporation headquartered in New York. Better Home offers mortgage and home equity loans, title and homeowner's insurance, home inspections, and real estate agent services. Better Home's Board of Directors (the "Board") comprises

---

[1] *Kellner v. AIM ImmunoTech Inc.*, 320 A.3d 239, 258 (Del. 2024).

[2] C.A. No. 2024-0306-KSJM, Docket ("Dkt.") 1 ("Compl.").

Michael Farello, Vishal Garg (CEO), Arnaud Massenet, Prabhu Narasimhan, Steven Sarracino, Harit Talwar (Chairman of the Board), and Riaz Valani (the "Director Defendants," and with Better Home, "Defendants").

On August 22, 2023, the Company adopted its current bylaws, including the challenged advance-notice bylaw (the "Bylaw"). The text of the Bylaw is included at the end of this decision and quoted in the Legal Analysis.

Plaintiff Matthew Wright ("Plaintiff") has been a Better Home stockholder since October 17, 2023. He filed suit on March 26, 2024, seeking declaratory relief invalidating the Bylaw (Count I), and alleging that the Director Defendants breached their fiduciary duties by adopting the Bylaw (Count II).[3]

Defendants moved to dismiss the Complaint on October 8, 2024. For the first time in their reply brief, Defendants raised ripeness as a basis for dismissal. This prompted a sur-reply from Plaintiff. The parties completed briefing on January 29, 2025.[4] The court heard argument on the motion on March 28, 2025.[5] At the court's request, on April 1, 2025 Plaintiff submitted a letter on the status of its similar advance-notice bylaw cases.[6]

---

[3] *See generally*, Dkt. 1.

[4] *See* Dkts. 21 (Defs.' Opening Br.), 23 (Pl.'s Answering Br.), 28 (Defs.' Reply Br.), 36 (Pl.'s Sur-Reply Br.).

[5] *See* Dkts. 39 (Judicial Action Form), 43 ("3/28/25 Hr'g Tr.").

[6] 3/28/25 Hr'g Tr. at 19:15–20:16; Dkt. 42. The letter indicates that Plaintiff's counsel has ten other cases concerning advance-notice bylaws pending before this court. Counsel has represented that several of those cases are stayed pending the outcome of this case. The court dismissed one case, *Siegel*, for lack of subject matter jurisdiction. *See Siegel v. Morse*, C.A. No. 2024-0628-NAC (Del. Ch. Apr. 14, 2025)

## II.   LEGAL ANALYSIS

Defendants move to dismiss the Complaint under Court of Chancery Rule 12(b)(6). "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[7] When considering a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . ., draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[8] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[9] Under this standard, Defendants argue that Plaintiff has not stated a claim for invalidity. Defendants further argue that Plaintiff's claim for facial invalidity is not ripe. This analysis begins with Defendants' ripeness argument.

### A.   Ripeness

"A ripeness determination requires a commonsense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court in

---

(ORDER); *see also Siegel v. Morse*, 2025 WL 1101624, at *5, *8 (Del. Ch. Apr. 14, 2025), *appeal docketed sub nom.*, *In re AES Corp. & Owens Corning*, C.A. No. 218, 2025C (Del. May 14, 2025). That decision is currently on appeal. *See* C.A. No. 2024-0628-NAC, Dkt. 84 (Del. Ch. May 14, 2025) (Notice of Appeal). As discussed below, *Siegel* did not involve a facial challenge, so it has no bearing on this decision. And this decision does not address any of the issues on appeal in *Siegel*.

[7] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[8] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[9] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)), *overruled on other grounds by*, *Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018).

postponing review until the question arises in some more concrete and final form."[10]

A dispute is ripe if "litigation sooner or later appears to be unavoidable" and "the material facts are static."[11]

Defendants argue that Plaintiff's claim is not ripe because "Plaintiff does not—and cannot—allege that he or any other stockholder attempted to nominate a director and does not allege that any such effort was rejected by the Board."[12]

Defendants rely on *Siegel*, where this court dismissed a stockholder suit challenging an advance-notice bylaw as unripe because the stockholder had not nominated a candidate for election.[13] But the plaintiff in *Siegel* argued that enhanced scrutiny applied and expressly "disclaimed a facial validity challenge[.]"[14] Plaintiff here asserts a facial challenge. A facial challenge presents a pure question of law, the material facts are static, and there is thus no need to postpone resolution to allow

---

[10] *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (citation modified); *see also Nask4Innovation Sp. Z.o.o. v. Sellers*, 2022 WL 4127621, at *4 (Del. Ch. Sept. 12, 2022) ("In determining whether a dispute is ripe, the Court must take a practical view of all relevant facts and make a common-sense determination of whether adjudicating a dispute at present is a prudent use of judicial resources.");

[11] *XL Specialty*, 93 A.3d at 1217 (quoting *Julian v. Julian*, 2009 WL 29371212, at *3 (Del. Ch. Sept. 9, 2009)) (citation modified).

[12] Defs.' Reply Br. at 19.

[13] *Siegel*, 2025 WL 1101624, at *6. The court raised the issue of ripeness during oral argument on the stockholder plaintiff's motion to expedite and the defendants' motion to stay proceedings. *See Siegel v. Morse*, C.A. No. 2024-0628-NAC, at 11 (Del. Ch. June 26, 2024) (TRANSCRIPT).

[14] *Siegel*, 2025 WL 1101624, at *5.

4

for the question to arise in a more concrete form. For that reason, Delaware courts routinely resolve facial challenges without undertaking ripeness analyses.[15]

By arguing that this court's consideration of a facial challenge should be conditioned on the presence of factors that would ripen an as-applied challenge, Defendants call for a change in Delaware law.[16] That change would be problematic. As discussed below, stockholders pursuing facial challenges assume an onerous burden under *Kellner*. They must demonstrate that the corporate instrument cannot operate lawfully in *any* circumstance. A facial challenge to an advance-notice bylaw claims that a mandatory rule governing stockholder nomination of directors does not work *ever*, in *any* circumstance. Deeming such a claim unripe would run the risk of

---

[15] *See, e.g.*, *Kellner*, 320 A.3d at 262–63 (resolving facial validity claim challenging bylaw without evaluating ripeness); *Frecter v. Zier*, 2017 WL 345142, at *2–4 (Del. Ch. Jan. 24, 2017) (same); *In re VAALCO Energy, Inc. S'holder Litig.*, C.A. No. 11775-VCL, at 59–69 (Del. Ch. Dec. 21, 2015) (TRANSCRIPT) (same); *Gorman v. Salamone*, 2015 WL 4719681, at *5–6 (Del. Ch. July 31, 2015) (same); *Sinchareonkul v. Fahnemann*, 2015 WL 292314, at *6–8 (Del. Ch. Jan. 22, 2015) (same).

[16] While this lawsuit was pending, two Delaware attorneys published an article making a more robust version of this argument. *See* John Mark Zeberkiewicz & Robert B. Greco, *Not All Facial Challenges Are Ripe*, 80 Bus. Law. 747 (2025). Positing that a facial challenge is "not always ripe," the authors argue that Delaware courts should not "expend resources resolving the issues raised" by facial challenges to corporate instruments. *Id.* at 788. They acknowledge that Delaware courts have "resolved facial challenges to governance provisions with some degree of regularity" over the past decade. *Id.* at 761. They argue, however, that each case resolving a facial validity challenge involved case-specific factors warranting resolution of the claim. The case-specific factors identified by the authors include: present harm to the stockholder plaintiff; parallel as-applied challenges; an ongoing proxy contest; or the fact that the challenged bylaw had been adopted by multiple corporations. *Id.* at 755–57, 763–72, 775–88. Fairly read, however, Delaware's commonsense approach to ripeness does not require a plus factor, even though many were present in past decisions resolving facial validity. If a case-specific plus factor is required to render a facial challenge ripe, then the fact that ten cases are stayed pending this decision checks that box here.

leaving uncured wholly inoperable rules governing director elections. That is extreme. If Defendants seek a rule that would discourage frivolous lawsuits, then the legal standard expressed in *Kellner* does so. Rejecting facial challenges to advance-notice bylaws on ripeness grounds risks discouraging meritorious lawsuits.

Ultimately, Delaware's approach to ripeness leaves the determination to the discretion of the court.[17] For the benefit of the parties here (and those in the ten other matters involving similar challenges), commonsense dictates resolving the matter on its merits.

## B. Invalidity

Under Delaware law, bylaws are "presumed to be valid" and must be interpreted "in a manner consistent with the law."[18] A bylaw is facially valid if it is "authorized by the Delaware General Corporation Law (DGCL), consistent with the corporation's certificate of incorporation, and [] not []otherwise prohibited."[19] A bylaw is "otherwise prohibited" if it "cannot operate lawfully under any set of

---

[17] *See Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989) ("The reasons for not rendering a hypothetical opinion must be weighed against the benefits to be derived from the rendering of a declaratory judgment. This weighing process requires "the exercise of judicial discretion[.]"); *Horizon Pers. Commc'ns, Inc. v. Sprint Corp.*, 2006 WL 2337592, at *17 (Del. Ch. Aug. 4, 2006) ("The ripeness of a dispute is a matter entrusted to the discretion of the trial court." (quoting *UbiquiTel Inc. v. Sprint Corp.*, 2006 WL 44424, at *2 (Del. Ch. Jan. 4, 2006))) (citation modified).

[18] *Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401, 407 (Del. 1985).

[19] *ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 557–58 (Del. 2014).

6

circumstances."[20]   The Delaware Supreme Court further clarified this concept in *Kellner*, holding that an unintelligible bylaw is facially invalid.[21]

This analysis begins with a close reading of the Bylaw and then turns to Plaintiff's arguments for invalidity.

### 1.   The Advance-Notice Bylaw

The Bylaw sets the ground rules for nominating directors for election at an annual stockholder meeting.[22]   It has two basic requirements.   It establishes a nomination window, requiring a nominating stockholder to notify Better Home of its director nomination in writing 90 to 120 days before the one-year anniversary of the prior year's annual stockholder meeting.[23]   It also sets disclosure requirements, stating what information the nominating stockholder must include in the notice.

Plaintiff challenges the Bylaw's disclosure requirements.   Three terms defined in the Bylaw are relevant to Plaintiff's challenge:   "Proposing Person," "Associated Person," and "Acting in Concert."

The notice must contain information about the director nominee as well as each Proposing Person.[24]   The Bylaw defines a Proposing Person as:

---

[20] *Kellner*, 320 A.3d at 258.

[21] *Kellner*, 320 A.3d at 263.

[22] By its plain terms, the Bylaw sets the "exclusive means for a stockholder to make nominations . . . at an annual meeting of stockholders, and such stockholder must fully comply with the notice and other procedures set forth in this Section 1.11 to make such nominations . . . before an annual meeting."   Compl., Ex. 1 ("Bylaws") § 1.11.1(a)(iii).

[23] *See id.* § 1.11.1(b)

[24] *Id.* § 1.11.1(b)(x), (z).

7

(1) the stockholder providing the notice of business proposed to be brought before an annual meeting or nomination of persons for election to the Board at a stockholder meeting, (2) the beneficial owner or beneficial owners, if different, on whose behalf the notice of business proposed to be brought before the annual meeting or nomination of persons for election to the Board at a stockholder meeting is made, and (3) any Associated Person on whose behalf the notice of business proposed to be brought before the annual meeting or nomination of persons for election to the Board at a stockholder meeting is made[.][25]

As defined, Proposing Person includes any Associated Person. The Bylaw defines Associated Person as:

with respect to any subject stockholder or other person (including any proposed nominee) (1) any person directly or indirectly controlling, controlled by or under common control with such stockholder or other person, (2) any beneficial owner of shares of stock of the Corporation owned of record or beneficially by such stockholder or other person, (3) any associate . . . of such stockholder or other person, and (4) any person directly or indirectly controlling, controlled by or under common control or Acting in Concert with any such Associated Person[.][26]

As defined, Associated Person includes any person with whom a Proposing Person is Acting in Concert. With bracketed language inserted and text and formatting altered to aid this analysis, the Bylaw defines Acting in Concert as follows:

[A] person shall be deemed to be "***Acting in Concert***" with another person if such person

**[Part A]** knowingly acts (whether or not pursuant to an express agreement, arrangement or understanding) **[1]** in concert with, **or [2]** toward a common goal relating to the

---

[25] *Id*. § 1.11.3(c)(iii).

[26] *Id*. § 1.11.3(c)(ii).

8

management, governance or control of the Corporation in substantial parallel with, such other person

**[Part B]** . . . **[1] [i]** where each person is conscious of the other person's conduct or intent **and [ii]** this awareness is an element in their decision-making processes **and**

**[Part C]** at least one additional factor suggests that such persons intend to act in concert or in substantial parallel, which such additional factors may include, without limitation, **[1]** exchanging information (whether publicly or privately), **[2]** attending meetings, **[3]** conducting discussions **or [4]** making or soliciting invitations to act in concert or in substantial parallel;

**[The Carve-Out]** provided, that a person shall not be deemed to be Acting in Concert with any other person solely as a result of the solicitation or receipt of revocable proxies or consents from such other person in response to a solicitation made pursuant to, and in accordance with, Section 14(a) (or any successor provision) of the Exchange Act by way of a proxy or consent solicitation statement filed on Schedule 14A.

**[The Daisy Chain]** A person Acting in Concert with another person shall be deemed to be Acting in Concert with any third party who is also Acting in Concert with such other person[.][27]

As reflected above, the Acting-in-Concert Provision is a sea of subparts, which take a bit of effort to comprehend. Diving in, there are two ways to satisfy Part A. One, the person "knowingly acts (whether or not pursuant to an express agreement, arrangement or understanding) . . . in concert with . . . such other person."[28] Or two, the person "knowingly acts (whether or not pursuant to an express agreement, arrangement or understanding) . . . toward a common goal relating to the

---

[27] *Id*. § 1.11.3(c)(i).

[28] *Id*.

management, governance or control of the Corporation in substantial parallel with, such other person."[29] A knowledge requirement qualifies both subparts—the person must be acting "knowingly." The parenthetical language, "whether or not pursuant to an express agreement, arrangement, or understanding," also qualifies both subparts. The parenthetical means what it says: there is no need for *any* express agreement, arrangement, or understanding. To satisfy Part A, therefore, a stockholder could have an unstated agreement, arrangement, or understanding; or a stockholder could have none of those.

At first glance, the first Part A subpart seems circular and not more informative beyond the two qualifiers. It says that Acting in Concert means acting in concert. But Delaware courts apply principles of contract interpretation to corporate instruments.[30] And those principles assume that the parties contracted with reference to existing law.[31]

That interpretive principle comes into play here because, a month before the Board adopted the Bylaw, the Delaware Supreme Court issued *CCSB Financial Corp. v. Totta.*[32] *Totta* affirmed this court's decision invalidating a charter provision that

---

[29] *Id.*

[30] *See BlackRock Credit Allocation Income Tr. v. Saba Cap. Master Fund, Ltd.*, 224 A.3d 964, 977 (Del. 2020) (holding that rules of contract interpretation apply to corporate bylaws and charters).

[31] *See* 11 Richard A. Lord, *Williston on Contracts* § 30.19 (4th Ed. 2025) ("Except when a contrary intention is evident, the parties to a contract . . . are presumed or deemed to have contracted with reference to existing principles of law.); *id* (common law supplies "implied terms of the contract").

[32] 302 A.3d 387 (Del. 2023).

imposed a 10% cap on votes cast by persons deemed acting in concert.[33] The trial court held that "an *undefined* reference to 'acting in concert' cannot reasonably go beyond" the existence of "an agreement, arrangement, or understanding."[34] And the high court affirmed that interpretation as "legally sound," specifically noting that the corporate charter did not define "acting in concert."[35] The lesson of *Totta* is straightforward: for "acting in concert" to "go beyond" requiring "an agreement, arrangement, or understanding," it must be *defined*.

The first Part A subpart applies the lesson of *Totta* by defining Acting in Concert to not require an express agreement, arrangement, or understanding. In this way, the first Part A subpart is not circular; rather, it responds to *Totta*.

The second Part A subpart establishes other ways to Act in Concert. It is broadly worded to include working toward any "common goal relating to the management, governance, or control of the [Company.]"[36] Goals related to "management, governance, or control" is a broad set of goals that seem to cover everything related to the Company. This subpart also adopts the "substantial parallel" language commonly included in stockholder rights plans to capture "wolf pack" activity.[37] The purpose of the "substantial parallel" language is to capture

---

[33] *Totta v. CCSB Fin. Corp.*, 2022 WL 1751741 (Del. Ch. May 31, 2022).

[34] *Id.* at *25 (emphasis added).

[35] *Totta*, 302 A.3d at 402–03.

[36] Bylaws § 1.11.3(c)(i).

[37] *In re Williams Cos. S'holder Litig.*, 2021 WL 754593, at *11 (Del. Ch. Feb. 26, 2011).

11

"conscious parallelism that deliberately stops short of an explicit agreement."[38] The "substantial parallel" language thus is intended to expand and not restrict Part A.

There is only one way to satisfy Part B, which has two parts. One, a person must be "conscious of the other person's conduct or intent."[39] And two, "this awareness" must be "an element in their decision-making processes."[40] Restated, a person is acting in concert with another because in part the person is aware of the other's action or intent. Framed this way, Part B seems to introduce the concept of causation ("because") without using the language of causation (instead saying that it must be "an element in the decision making").

There are many ways to satisfy Part C. It requires "at least one additional factor" that "suggests that such persons intend to act in concert or in substantial parallel."[41] It provides four "plus" factors that would satisfy Part C but also makes clear that the list is not exhaustive.

Each of Parts A through C must be met. Putting their requirements together, a stockholder is Acting in Concert with another person where: [A] the stockholder knowingly acts in concert with the other person, or knowingly acts in substantial parallel toward a common goal relating to the management, governance or control of the Corporation; [B] the other person's conduct or intent is an element in the stockholder's decision-making processes; and [C] at least one plus factor is present.

---

[38] *Id.*

[39] Bylaws § 1.11.3(c)(i).

[40] *Id.*

[41] *Id.*

12

After Parts A through C, there is a carve-out. Under the carve-out, even if each of the A through C requirements are met, a person will not be Acting in Concert "solely as a result" of the proxy solicitation process described in the carve-out.[42]

Last, there is the "daisy chain," which uses the transitive property to extend the Associated Person: If Parts A through C are satisfied between Person 1 and Person 2, and Parts A through C are satisfied between Person 2 and Person 3, then Person 1 and Person 3 are Acting in Concert.

Atop all of this, a portion of the Bylaw not quoted above requires a nominating stockholder to regularly update the notice "so that the information provided or required to be provided in such notice is true and correct in all material respects[.]"[43]

### 2. The Advance-Notice Bylaw Is Not Facially Invalid.

Plaintiff argues that the Bylaw is invalid for two reasons: one, it is unintelligible; and two, complying with it is impossible.

### a. Is It Unintelligible?

*Kellner* instructs that an unintelligible bylaw is invalid. When referring to written words, "unintelligible" means that the words are incomprehensible.[44] That

---

[42] This carve-out distinguishes the Bylaw from the advance-notice bylaw challenge in *In re Versum Materials, Inc. Stockholders Litigation*, Consol. C.A. No. 2019-0206-JTL, at 52, 60 (Del. Ch. July 16, 2020) (TRANSCRIPT) (expressing doubt about the validity of a rights plan containing an action-in-concert provision that aggregated the holdings of stockholders who interacted during a proxy solicitation process).

[43] *See id.* § 1.11.1(b).

[44] *See Unintelligibility*, Black's Law Dictionary (12th ed. 2024) ("Incomprehensibility; the quality of being incapable of being understood."); *Unintelligible*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/unintelligible [https://perma.cc/H26K-XCSM] (last visited Oct. 7, 2025) ("unable to be understood

is, a person cannot comprehend their meaning. *Kellner* captures the commonsense understanding that sometimes a complicated provision is so convoluted as to make zero sense. When a rule crosses the line from hard-to-understand to unintelligible, then no one will know how to apply it. At that point, the rule "cannot operate lawfully under any set of circumstances" because it cannot operate at all.[45]

The Bylaw is a lot to take in. Parts of it are quite broad. And others are confusing. But does it cross the line to unintelligible? Plaintiff says yes for roughly four reasons: it is circular; it is overbroad; it imputes uniquely human conduct to entities; and it requires a nominating stockholder to identify persons unknown to it.

First, Plaintiff criticizes Part A as circular (because "Acting in Concert" means "acting in concert").[46] Plaintiff argues that this is problematic based on *Totta.* Plaintiff reads *Totta* to hold that "acting in concert" means "*only* the existence of an agreement, arrangement, or understanding."[47] As discussed above, however, that is true only in the absence of a definition. Read properly, the purpose of Part A is to eliminate the default meaning ascribed to it in *Totta.* This aspect of the Bylaw, therefore, does not render it unintelligible.

---

or comprehended"); *Unintelligible*, Dictionary.com, *available at* https://www.dictionary.com/browse/ unintelligible [https://perma.cc/9SL6-XQFA] (last visited Oct. 7, 2025) (defining unintelligible as "not capable of being understood"); *see also Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) ("Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined.").

[45] *Kellner*, 320 A.3d at 258.

[46] Pl.'s Answering Br. at 12.

[47] *Id.* (discussing *Totta*) (citation modified).

14

Second, Plaintiff criticizes the breadth of conduct covered by Parts A through C.[48] Plaintiff says that "relating to the management, governance or control of the Corporation" is "unworkably vague" and "would encompass something as universal as a general desire for improved management of the Company."[49] Plus, the subject-matter requirement in the second Part A subpart does not limit the scope of the first subpart. As a result, "two people who consciously acted together for any purpose, including a purpose totally unrelated to 'the management, governance or control of the Corporation,' would be deemed Acting in Concert."[50] Relatedly, Plaintiff says that the Bylaw does not explain what "conduct or intent" is relevant to Part B, and the non-exclusive list of Part C "covers a potentially infinite set of unenumerated actions."[51]

The substance of Plaintiff's criticism is dead on—Parts A through C are broad and easily satisfied. Part A's first subpart's only purpose is to disclaim the common-law meaning of "acting in concert." The subject-matter clause of Part A's second subpart ("relating to management, governance or control") seems to include all acts related to the Company. Part B's reference to "conduct or intent" captures a large swath of human and entity conduct, as does Part C's non-exhaustive list of plus factors evidencing intent to act in substantial parallel. Parts A through C's single limiting principle is the knowledge requirement.

---

[48] *Id.*

[49] *Id.*

[50] *Id.* at 13.

[51] *Id.* at 12–13.

But Plaintiff's conclusion is misguided—a provision's breadth does not necessarily render it unintelligible. Broad in this context means "extending far and wide."[52] That is not the same as incomprehensible. Parts A through C are broad because they cover an expansive set of conduct. But (with a good bit of work) a stockholder can comprehend them.

Third, Plaintiff takes issue with including entities in the definition of Proposing Person.[53] The Acting in Concert provision requires a Proposing Person to disclose "any knowledge that another person *or entity* is Acting in Concert."[54] Yet, as Plaintiff notes, only sentient beings are capable of some of the conduct covered by the definition—humans uniquely have "consciousness," "intent," and "awareness," and "attend[] meetings."[55] Plaintiff argues that because entities cannot take actions uniquely attributable to humans, there is no way to discern when entities are Acting in Concert.

Plaintiff's third argument fights against the fact that—at least for now— *humans* operate entities. Through humans, entities can do things like express an intent, become aware, and attend meetings. Granted, one would typically not go so far as to say that a corporation has consciousness merely because a human operates

---

[52] *Broad*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/broad [https://perma.cc/J6W6-CQR7] (last visited Oct. 6, 2025); *see also Veto v. Am. Fam. Mut. Ins. Co.*, 815 N.W.2d 713, 718 (Wis. Ct. App. 2012) (defining "broad" as "of great breadth" and "not limited or narrow; of extensive range or scope" (citing *Broad*, Dictionary.com)).

[53] Pl.'s Answering Br. at 14.

[54] *See* Bylaws § 1.11.3(b)(z)(viii) (emphasis added).

[55] Pl.'s Answering Br. at 14 (citation modified).

16

the corporation. Still, the reality is that a nominating stockholder—be it an entity or a person—can in fact act conscious of an entity's intent, and that awareness can be a factor in the nominating stockholder's decision making. Plus, including entities in the definition of Acting in Concert is consistent with the purpose of advance-notice bylaws. In fact, because entities can own stock under Delaware law, excluding them from the Acting-in-Concert provision would render that requirement easy to dodge.[56] Including entities in the definition is sensible, not unintelligible.

Fourth, Plaintiff argues that the Bylaw is unintelligible because two aspects of it requires a Proposing Party to identify persons unknown to them.[57]

Plaintiff first criticizes Parts A through C. Plaintiff argues that because the definition of Acting in Concert does not require an express agreement, arrangement, or understanding, it is unclear whether a Proposing Person would be required to disclose "mere concurrence[s] of self-interest with another stockholder," such as an instance where "two stockholders are chatting and discover they both coincidentally want to elect the same director."[58] Other aspects of Parts A through C, however,

---

[56] "The transfer of stock generally of Delaware corporations is governed by Delaware's version of Article 8, Investment Securities, of the Uniform Commercial Code[.]" 2 David A. Drexler, et al., *Delaware Corporation Law and Practice* § 22.01 (2024). Article 8 of Delaware's UCC provides that any "person," a term which includes business entities, acquires ownership of a security when they receive delivery. *See* 6 *Del. C.* § 8-104(a)(1) ("A person acquires a security . . . under this Article, if . . . the person is a purchaser to whom a security is delivered[.]"), § 1-201(27) (defining "person" as "an individual, corporation, business trust, statutory trust, estate, trust, partnership, limited liability company, association . . . [or] any other legal or commercial entity[.]").

[57] Pl.'s Answering Br. at 16–27.

[58] *Id*. at 16.

17

eliminate much of Plaintiff's concern. Due to the knowledge requirement of Part A, parts A through C are satisfied only if the Proposing Person "knowingly" acts in concert or toward a common goal with another.[59] And as a result of the causation requirement of Part B, a person is acting in concert with another *because* in part the person is aware of the other's action or intent. These aspects of Parts A through C therefore presuppose that the nominating stockholder knows the persons it must identify.

Plaintiff next directs the same criticism—that the Bylaw requires nominating stockholders to disclose persons unknown to them—toward the daisy chain. This criticism has some merit, because the knowledge and causation qualifiers of Part A and B do not apply to the daisy chain. In briefing, Defendants suggest that the knowledge modifier of Part A in fact applies to the daisy-chain provision, such that nominating stockholders need only disclose persons known to them.[60] But Defendants' interpretation is not supported by the plain language of the Bylaw. Structurally, the daisy-chain provision overlays all aspects of Parts A through C;[61] the qualifiers of Parts A through C thus do not limit the daisy chain requirement.

For example, the daisy chain operates as follows: Person A intends to nominate a director. Person A and Person B are Acting in Concert to advance Person A's

---

[59] *See* Bylaws § 1.11.3(c)(i).

[60] Defs.' Reply Br. at 18 ("the Challenged Bylaws require disclosure of persons the stockholder **knows** are 'Acting in Concert' with the stockholder" (emphasis in original)).

[61] *See supra* Legal Analysis § II.A.

18

nomination. Person B, unbeknownst to Person A, is also working with Person C to advance Person A's nomination. Under the last sentence of the Acting in Concert definition, Person A is Acting in Concert with Person C. As a result, Person A's nomination could be rejected under the Bylaw if Person A fails to disclose the participation of Person C.[62] The definition stretches the possible chain of people Acting in Concert even further because if Person C Acts in Concert with another third party, Person D, then Person A, the nominator, would also be Acting in Concert with Person D. Under this example, a requirement that Person A disclose information about Persons C and D might seem to make no sense since Person A is not communicating with Person D (or even Person C).

But what the Bylaw effectively does is impose on any Proposing Person (Person A) the obligation to ask the people with whom she is Acting in Concert whether they are acting in concert with anyone else.[63] In this way, the Bylaw imposes an investigative burden on the Proposing Person. A stockholder might rightly take issue with that requirement as burdensome to the point of unreasonable. But where a party brings a facial challenge to a bylaw, the court does not assess reasonableness—

---

[62] *See* Bylaws § 1.11.1(b)(z)(viii) (requiring "a complete written description of any agreement, arrangement or understanding . . . between or among such Proposing Person, any of its respective affiliates or associates and any other person Acting in Concert with any of the foregoing").

[63] *See* 3/28/25 Hr'g Tr. at 16:1–4 (making this point).

that analysis is reserved for as-applied challenges.[64]   The investigative burden imposed by the Bylaw is onerous.  But it does not render the Bylaw unintelligible.

Plaintiff argues that the Bylaw here "is even more vague and wildly sprawling" than that struck down in *Kellner*.[65]  But that is not the case.  The ownership provision struck as unintelligible in *Kellner* was a 1,099-word sentence containing 13 subsections that the Supreme Court characterized as imposing "virtually endless requirements on a stockholder seeking to nominate directors."[66]  The Bylaw here is not on the same level.  It is long, broad, and onerous, and there are many reasons why it is suboptimal.[67]  But it is not unintelligible.

### b.    Is Compliance Impossible?

Relying on *Versum*, Plaintiff redeploys its persons-unknown point to argue that it is impossible to comply with the Bylaw.[68]  That is, Plaintiff argues that a nominating stockholder cannot comply with the daisy-chain provision because it requires a nominating stockholder to identify persons unknown to it.  That argument

---

[64] *See Kellner*, 320 A.3d at 262–263 (explaining that bylaws are subject to review for legal compliance (whether the bylaw is valid) and to ensure that they are equitable (whether or not the bylaw is enforceable), and noting that "[w]hen a validity challenge is raised . . . the court should undertake an analysis distinct from enhanced scrutiny review," which contemplates whether a board adopted a challenged bylaw in response to a real threat to a corporation's interest and whether the bylaw was reasonable in relation to the threat posed).

[65] Pl.'s Answering Br. at 11.

[66] *Kellner*, 320 A.3d at 253, 263.

[67] *See generally* Benjamin C. Bates, *Rewriting the Rules for Corporate Elections*, 100 N.Y.U. L. Rev 635, 692–96 (2025) (describing how overly complex advance-notice bylaws chill stockholder nominations and decrease board accountability by increasing the costs of successfully nominating board candidates to challenge incumbents).

[68] *See* Pl.'s Answering Br. at 17–19 (discussing *Versum*, C.A. No. 2019-0206-JTL).

fails for the reasons stated above—a nominating stockholder can investigate whether persons are acting in concert with others.

*Versum* does not inform this analysis because it involved an applied challenge subject to enhanced scrutiny, not a facial challenge under *Kellner*.[69] Framed generally, enhanced scrutiny requires the court to evaluate "the reasonableness of the end that the directors chose to pursue, the path that they took to get there, and the fit between the means and the end."[70] A facial challenge to an advance-notice bylaw is more limited in scope. A plaintiff cannot attack the facial validity of a bylaw based on the fit between the means and the end. Nor can a plaintiff prevail on a facial challenge by showing that, "under some circumstances, a bylaw might conflict with a statute or operate unlawfully."[71] Rather, the bylaw must be incapable of operating lawfully in any circumstances. Plaintiff has failed to make that showing here.[72]

---

[69] *Versum* involved an applied challenge to a rights plan adopted by Versum to protect its stock-for-stock merger from an all-cash topping bid. *See* C.A. No. 2019-0206-JTL, at 54. The plaintiff filed suit, challenging the plan's acting-in-concert provision, which included the same daisy-chain provision found in the Bylaw here. *Id.* at 52–53, 56. Versum withdrew the rights plan in response to the plaintiff's lawsuit, and the plaintiff's counsel sought mootness fees. *See id.* at 57. The fee petition required the court to address whether the plaintiff's claim was meritorious under the enhanced scrutiny standard of *Unocal*. *Id.* at 57–59. The court concluded that the plaintiff's claim was meritorious under this standard because there was a "misfit between the pill and the situation." *Id.* at 67.

[70] *See Obeid v. Hogan*, 2016 WL 3356851, at *13 (Del. Ch. June 10, 2016).

[71] *Kellner*, 320 A.3d at 258.

[72] Plaintiff also relies on *Williams* throughout briefing, but that case is distinguishable for the same reason—it too involved an as-applied challenge. *See Williams*, 2021 WL 754593, at *5.

21

## III. CONCLUSION

Plaintiff has failed to establish that the Bylaw is facially invalid. Count I is dismissed. Count II for breach of fiduciary duties is premised on Count I and thus fails. Count II is also dismissed. Defendants' Motion to Dismiss is granted in full.

**Better Home**
**Advance-Notice Bylaw**

1.11     Notice of Stockholder Business; Nominations.

1.       Annual Meeting of Stockholders.

(a)      Nominations of persons for election to the Board and the proposal of other business to be considered by the stockholders may be made at an annual meeting of stockholders only: (i) pursuant to the Corporation's notice of such meeting (or any supplement thereto), (ii) by or at the direction of the Board or any committee thereof or (iii) by any stockholder of the Corporation who was a stockholder of record at the time of giving of the notice provided for in this Section 1.11 (the "*Record Stockholder*"), who is entitled to vote at such meeting and who complies with the notice and other procedures set forth in this Section 1.11 in all applicable respects. For the avoidance of doubt, the foregoing clause (iii) shall be the exclusive means for a stockholder to make nominations or propose business (other than business included in the Corporation's proxy materials pursuant to Rule 14a-8 under the Securities Exchange Act of 1934, as amended (such act, and the rules and regulations promulgated thereunder, the "*Exchange Act*")), at an annual meeting of stockholders, and such stockholder must fully comply with the notice and other procedures set forth in this Section 1.11 to make such nominations or propose business before an annual meeting.

(b)      For nominations or other business to be properly brought before an annual meeting by a Record Stockholder pursuant to Section 1.11.1(a) of these Bylaws:

(i)      the Record Stockholder must have given timely notice thereof in writing to the Secretary of the Corporation and provide any updates or supplements to such notice at the times and in the forms required by this Section 1.11;

(ii)     such other business (other than the nomination of persons for election to the Board) must otherwise be a proper matter for stockholder action;

(iii)    if the Proposing Person (as defined below) has provided the Corporation with a Solicitation Notice (as defined below), such Proposing Person must, in the case of a proposal other than the nomination of persons for election to the Board, have delivered a proxy statement and form of proxy to holders of at least the percentage of the Corporation's voting shares required under applicable law to carry any such proposal, or, in the case of a nomination or nominations, have delivered a proxy statement and form of proxy to holders of a percentage of the Corporation's voting shares reasonably believed by such Proposing Person to be sufficient to elect the nominee or nominees proposed to be nominated by such Record Stockholder, and must, in either case, have included in such materials the Solicitation Notice; and

(iv)    if no Solicitation Notice relating thereto has been timely provided pursuant to this Section 1.11, the Proposing Person proposing such business or nomination must not have solicited a number of proxies sufficient to have required the delivery of such a Solicitation Notice under this Section 1.11.

To be timely, a Record Stockholder's notice must be delivered to the Secretary at the principal executive offices of the Corporation not later than the close of business on the ninetieth (90th) day nor earlier than the close of business on the one hundred and twentieth (120th) day prior to the first anniversary of the preceding year's annual meeting (except in the case of the Corporation's annual meeting held in 2022, for which such notice shall be timely if delivered in the same time period as if such meeting were a special meeting governed by Section 1.2 of these Bylaws); *provided*, *however*, that in the event that the date of the annual meeting is more than thirty (30) days before, or more than sixty (60) days after, such anniversary date, notice by the Record Stockholder to be timely must be so delivered (A) no earlier than the close of business on the one hundred and twentieth (120th) day prior to such annual meeting and (B) no later than the close of business on the later of the ninetieth (90th) day prior to such annual meeting or the close of business on the tenth (10th) day following the day on which Public Announcement (as defined below) of the date of such meeting is first made by the Corporation. In no event shall an adjournment or

postponement of an annual meeting for which notice has been given commence a new time period (or extend any time period) for providing the Record Stockholder's notice. Such Record Stockholder's notice shall set forth:

(x) as to each person whom the Record Stockholder proposes to nominate for election or reelection as a director:

(i) the name, age, business address and residence address of such person;

(ii) the principal occupation or employment of such nominee;

(iii) the class, series and number of any shares of stock of the Corporation that are beneficially owned or owned of record by such person or any Associated Person (as defined in Section 1.11.3(c));

(iv) the date or dates such shares were acquired and the investment intent of such acquisition;

(v) all other information relating to such person that would be required to be disclosed in solicitations of proxies for election of directors in an election contest (even if an election contest is not involved), or would be otherwise required, in each case pursuant to and in accordance with Section 14(a) (or any successor provision) under the Exchange Act and the rules and regulations thereunder (including such person's written consent to being named in the proxy statement as a nominee, to the public disclosure of information regarding or related to such person provided to the Corporation by such person or otherwise pursuant to this Section 1.11 and to serving as a director if elected);

(vi) a statement whether such person, if elected, intends to tender, promptly following such person's election or reelection, an irrevocable resignation effective upon such person's failure to receive the required vote for reelection at any future meeting at which such person would face reelection and acceptance of such resignation by the Board, in accordance with the Corporation's Corporate Governance Guidelines; and

(vii)    whether such person meets the independence requirements of the stock exchange upon which the Corporation's Class A Common Stock is primarily traded.

(y)    as to any other business that the Record Stockholder proposes to bring before the meeting, a brief description of the business desired to be brought before the meeting, the text of the proposal or business (including the text of any resolutions proposed for consideration and in the event that such business includes a proposal to amend the Bylaws, the text of the proposed amendment), the reasons for conducting such business at the meeting and any material interest in such business of such Proposing Person, including any anticipated benefit to any Proposing Person therefrom; and

(z)    as to the Proposing Person giving the notice:

(i)    the current name and address of such Proposing Person, including, if applicable, their name and address as they appear on the Corporation's stock ledger, if different;

(ii)    the class or series and number of shares of stock of the Corporation that are directly or indirectly owned of record or beneficially owned by such Proposing Person, including any shares of any class or series of the Corporation as to which such Proposing Person has a right to acquire beneficial ownership at any time in the future;

(iii)    whether and the extent to which any derivative interest in the Corporation's equity securities (including without limitation any option, warrant, convertible security, stock appreciation right, or similar right with an exercise or conversion privilege or a settlement payment or mechanism at a price related to any class or series of shares of the Corporation or with a value derived in whole or in part from the value of any class or series of shares of the Corporation, whether or not such instrument or right shall be subject to settlement in the underlying class or series of shares of the Corporation or otherwise, and any cash-settled equity swap, total return

swap, synthetic equity position or similar derivative arrangement, as well as any rights to dividends on the shares of any class or series of shares of the Corporation that are separated or separable from the underlying shares of the Corporation) or any short interest in any security of the Corporation (for purposes of this Bylaw a person shall be deemed to have a short interest in a security if such person directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has the opportunity to profit or share in any profit derived from any increase or decrease in the value of the subject security, including through performance-related fees) is held directly or indirectly by or for the benefit of such Proposing Person, including without limitation whether and the extent to which any ongoing hedging or other transaction or series of transactions has been entered into by or on behalf of, or any other agreement, arrangement or understanding (including without limitation any short position or any borrowing or lending of shares) has been made, the effect or intent of which is to mitigate loss to or manage risk or benefit of share price changes for, or to increase or decrease the voting power of, such Proposing Person with respect to any share of stock of the Corporation;

(iv)    any other material relationship between such Proposing Person, on the one hand, and the Corporation, any affiliate of the Corporation or any principal competitor of the Corporation, on the other hand;

(v)    any direct or indirect material interest in any material contract or agreement with the Corporation, any affiliate of the Corporation or any principal competitor of the Corporation (including, in any such case, any employment agreement, collective bargaining agreement or consulting agreement);

(vi)    any other information relating to such Proposing Person that would be required to be disclosed in a proxy statement or other filing required to be made in connection with solicitations of proxies or consents by such Proposing Person in support of the business proposed to be brought before the meeting pursuant to Section 14(a) (or any successor provision) under the Exchange Act and the rules and regulations thereunder

(the disclosures to be made pursuant to the foregoing clauses (iv) through (vi) are referred to as "***Disclosable Interests***"). For purposes hereof "Disclosable Interests" shall not include any information with respect to the ordinary course business activities of any broker, dealer, commercial bank, trust company or other nominee who is a Proposing Person solely as a result of being the stockholder directed to prepare and submit the notice required by these Bylaws on behalf of a beneficial owner;

(vii)   such Proposing Person's written consent to the public disclosure of information provided to the Corporation pursuant to this Section 1.11;

(viii)   a complete written description of any agreement, arrangement or understanding (whether oral or in writing) (including any knowledge that another person or entity is Acting in Concert (as defined in Section 1.11.3(c) of these Bylaws) with such Proposing Person) between or among such Proposing Person, any of its respective affiliates or associates and any other person Acting in Concert with any of the foregoing persons;

(ix)   as to each person whom such Proposing Person proposes to nominate for election or reelection as a director, any agreement, arrangement or understanding of such person with any other person or entity other than the Corporation with respect to any direct or indirect compensation, reimbursement or indemnification in connection with service or action as a director known to such Proposing Person after reasonable inquiry;

(x)   a representation that the Record Stockholder is a holder of record of stock of the Corporation entitled to vote at such meeting and intends to appear in person or by proxy at the meeting to propose such business or nomination;

(xi)   a representation whether such Proposing Person intends (or is part of a group that intends) to deliver a proxy statement or form of proxy to holders of, in the case of a proposal, at least the percentage of the Corporation's voting shares required under applicable law to carry the proposal or, in the case of a

nomination or nominations, a sufficient number of holders of the Corporation's voting shares to elect such nominee or nominees (an affirmative statement of such intent being a "*Solicitation Notice*"); and

(xii) any proxy, contract, arrangement, or relationship pursuant to which the Proposing Person has a right to vote, directly or indirectly, any shares of any security of the Corporation.

The Corporation may also require any proposed nominee to furnish such other information, including completion of the Corporation's directors questionnaire, as it may reasonably require to determine whether the nominee would be considered "independent" as a director or as a member of the audit committee of the Board under the various rules and standards applicable to the Corporation.

A stockholder providing written notice required by this Section 1.11 will update and supplement such notice in writing, if necessary, so that the information provided or required to be provided in such notice is true and correct in all material respects as of (i) the record date for the meeting and (ii) the close of business on the fifth (5th) business day prior to the meeting and, in the event of any adjournment or postponement thereof, the close of business on the fifth (5th) business day prior to such adjourned or postponed meeting. In the case of an update and supplement pursuant to clause (i) of the foregoing sentence, such update and supplement will be received by the Secretary of the Corporation at the principal executive office of the Corporation not later than five (5) business days after the record date for the meeting, and in the case of an update and supplement pursuant to clause (ii) of the foregoing sentence, such update and supplement will be received by the Secretary of the Corporation at the principal executive office of the Corporation not later than two (2) business days prior to the date for the meeting, and, in the event of any adjournment or postponement thereof, two (2) business days prior to such adjourned or postponed meeting.

(c) Notwithstanding anything in the second sentence of Section 1.11.1(b) of these Bylaws to the

contrary, in the event that the number of directors to be elected to the Board is increased and there is no Public Announcement by the Corporation naming all of the nominees for director or specifying the size of the increased Board at least ninety (90) days prior to the first anniversary of the preceding year's annual meeting (or, if the annual meeting is held more than thirty (30) days before or sixty (60) days after such anniversary date, at least ninety (90) days prior to such annual meeting), a stockholder's notice required by this Section 1.11 shall also be considered timely, but only with respect to nominees for any new positions created by such increase, if it shall be delivered to the Secretary of the Corporation at the principal executive office of the Corporation no later than the close of business on the tenth (10th) day following the day on which such Public Announcement is first made by the Corporation.

2.      Special Meetings of Stockholders.

(a)     Any stockholder or stockholders seeking to call a special meeting pursuant to the Certificate of Incorporation and Section 1.2 of these Bylaws shall provide information comparable to that required by this Section 1.11, to the extent applicable, in any request made pursuant thereto. From the date of delivery of the stockholder notice, such stockholder must give written notice to the Secretary of the Corporation at the principal executive offices of the Corporation of any change in the information provided pursuant to this Section 1.11, within two (2) business days thereof (each an "*Update*"), provided that any such Update shall be delivered by such stockholder at least two business days prior to the closing of the polls at the meeting.

3.      General.

(a)     Only such persons who are nominated in accordance with the procedures set forth in this Section 1.11 shall be eligible to be elected at a meeting of stockholders and serve as directors and only such business shall be conducted at a meeting of stockholders as shall have been brought before the meeting in accordance with the procedures set forth in this Section 1.11. Except as otherwise provided by law or these Bylaws, the chairperson

of the meeting shall have the power and duty to determine whether a nomination or any other business proposed to be brought before the meeting was made or proposed, as the case may be, in accordance with the procedures set forth in this Section 1.11 and, if any proposed nomination or business is not in compliance herewith, to declare that such defective proposal or nomination shall be disregarded. Notwithstanding the foregoing provisions of this Section 1.11, unless otherwise required by law, if the stockholder (or a Qualified Representative of the stockholder (as defined below)) does not appear at the annual or special meeting of stockholders of the Corporation to present a nomination or proposed business, such nomination shall be disregarded and such proposed business shall not be transacted, notwithstanding that proxies in respect of such vote may have been received by the Corporation.

(b) Notwithstanding the foregoing provisions of this Section 1.11, a stockholder shall also comply with all applicable requirements of the Exchange Act and the rules and regulations thereunder with respect to the matters set forth herein. Nothing in this Section 1.11 shall be deemed to affect any rights of (i) stockholders to request inclusion of proposals in the Corporation's proxy statement pursuant to Rule 14a-8 under the Exchange Act or (ii) the holders of any series of Preferred Stock to elect directors pursuant to any applicable provisions of the Certificate of Incorporation.

(c) For purposes of this Section 1.11 the following definitions shall apply:

(i) a person shall be deemed to be "*Acting in Concert*" with another person if such person knowingly acts (whether or not pursuant to an express agreement, arrangement or understanding) in concert with, or toward a common goal relating to the management, governance or control of the Corporation in substantial parallel with, such other person where (1) each person is conscious of the other person's conduct or intent and this awareness is an element in their decision-making processes and (2) at least one additional factor suggests that such persons intend to act in concert or in substantial parallel, which such additional factors may include, without limitation, exchanging information (whether

publicly or privately), attending meetings, conducting discussions or making or soliciting invitations to act in concert or in substantial parallel; provided, that a person shall not be deemed to be Acting in Concert with any other person solely as a result of the solicitation or receipt of revocable proxies or consents from such other person in response to a solicitation made pursuant to, and in accordance with, Section 14(a) (or any successor provision) of the Exchange Act by way of a proxy or consent solicitation statement filed on Schedule 14A. A person Acting in Concert with another person shall be deemed to be Acting in Concert with any third party who is also Acting in Concert with such other person;

(ii) "*Associated Person*" shall mean with respect to any subject stockholder or other person (including any proposed nominee) (1) any person directly or indirectly controlling, controlled by or under common control with such stockholder or other person, (2) any beneficial owner of shares of stock of the Corporation owned of record or beneficially by such stockholder or other person, (3) any associate (as defined in Rule 405 under the Securities Act of 1933, as amended (the "Securities Act")), of such stockholder or other person, and (4) any person directly or indirectly controlling, controlled by or under common control or Acting in Concert with any such Associated Person;

(iii) "*Proposing Person*" shall mean (1) the stockholder providing the notice of business proposed to be brought before an annual meeting or nomination of persons for election to the Board at a stockholder meeting, (2) the beneficial owner or beneficial owners, if different, on whose behalf the notice of business proposed to be brought before the annual meeting or nomination of persons for election to the Board at a stockholder meeting is made, and (3) any Associated Person on whose behalf the notice of business proposed to be brought before the annual meeting or nomination of persons for election to the Board at a stockholder meeting is made;

(iv) "*Public Announcement*" shall mean disclosure in a press release reported by a national news service or in a document publicly filed by the

Corporation with the Securities and Exchange Commission pursuant to Section 13, 14 or 15(d) of the Exchange Act; and

(v)    to be considered a "***Qualified Representative***" of a stockholder, a person must be a duly authorized officer, manager or partner of such stockholder or must be authorized by a writing executed by such stockholder or an electronic transmission delivered by such stockholder to act for such stockholder as a proxy at the meeting of stockholders and such person must produce such writing or electronic transmission, or a reliable reproduction thereof, at the annual meeting; provided, however, that if the stockholder is (1) a general or limited partnership, any general partner or person who functions as a general partner of the general or limited partnership or who controls the general or limited partnership shall be deemed a Qualified Representative, (2) a corporation or a limited liability company, any officer or person who functions as the substantial equivalent of an officer of the corporation or limited liability company or any officer, director, general partner or person who functions as an officer, director or general partner of any entity ultimately in control of the corporation or limited liability company shall be deemed a Qualified Representative or (z) a trust, any trustee of such trust shall be deemed a Qualified Representative. The Secretary of the Corporation, or any other person who shall be appointed to serve as the secretary of the meeting, may require, on behalf of the Corporation, reasonable and appropriate documentation to verify the status of a person purporting to be a "Qualified Representative" for purposes hereof.